**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JAMES EARL CRENSHAW,**      ) | |
|                    ) | |
|      **Plaintiff,**      ) | |
|                    ) | |
| **v.**                        ) | **Civil Action No.  2:07-cv-00793-MHT-CSC** |
|                    ) | |
| **COOSA COUNTY JAIL, et al.,**      ) | |
|                    ) | |
|      **Defendants.**      ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sheriff Terry Wilson and Lieutenant David Stover, the Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On September 4, 2007, Plaintiff filed his Complaint with this Court, naming the Coosa County Jail, the Sylacauga Wal-Mart, Judge Rochester, Coosa County Sheriff Terry Wilson, and Lieutenant David Stover of the Coosa County Sheriff's Office.  (Doc. 1.)  On September 7, 2007, the Magistrate Judge entered a Report and Recommendation proposing that the Coosa County Jail, Wal-Mart, and Judge Rochester be dismissed.  (Doc. 4.)  The Report and Recommendation Ordered a Special Report be filed on behalf of Sheriff Wilson and Lieutenant Stover.  (Doc. 4.)

## PLAINTIFF'S ALLEGATIONS

In the Plaintiff's Complaint, the only allegation directed against Sheriff Wilson is the following vague and conclusory statement: "Terry Wilson accused me of breaking the law, when I was told to do something as a Trustee."  (Doc. 1, p. 3.)  Construed in a light most favorable to the Plaintiff, a *pro se* inmate, this allegation could state a federal claim under the Fourteenth Amendment for malicious prosecution.  Such a claim could also be brought under state law. Additionally, this claim could be construed as a state-law defamation claim.  Such a defamation

claim, however, cannot be brought under § 1983. <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)

(refusing to recognize a federal claim for defamation against a state official under § 1983,

because, although "a number of our prior cases pointed out the frequently drastic effect of the

'stigma' which may result from defamation by the government in a variety of contexts, this line

of cases does not establish the proposition that reputation alone, apart from some more tangible

interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the

procedural protection of the Due Process Clause").    The only allegation directed against

Lieutenant Stover is the following statement: "Lt. Stover opened my legal mail without me been

[sp.] there."    This allegation of tampering with legal mail could be construed as an access to

courts claim under the Sixth Amendment.    Thus, at most, the Plaintiff has potentially alleged two

state law claims against Sheriff Wilson and one federal claim against Lieutenant Stover.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

The Defendants deny the allegations made against them by Plaintiff as being untrue and

completely without basis in law or fact.    The Defendants deny that they acted, or caused anyone

to act, in such a manner as to deprive Plaintiff of any right to which he was entitled.    The

Defendants raise the defenses of Eleventh Amendment immunity, absolute immunity, qualified

immunity, the Prison Litigation Reform Act ("PLRA"), and additional defenses presented below.

The Defendants reserve the right to add additional defenses if any further pleading is required or

allowed by the Court.

**I.    FACTS**

The Plaintiff was incarcerated in the Coosa County Jail on June 22, 2006, on one count of

theft of property in the first degree. (Exhibit A, Inmate Records of James Earl Crenshaw,

"Inmate Records," Arrest & Booking Report.)[1]

---

[1] The remainder of the Plaintiff's inmate file has been submitted as Exhibit E.    Accordingly, the Plaintiff's entire inmate file is before this Court for review.

2

A.    **Accusation of a Criminal Offense**

When read in a light most favorable to the Plaintiff, the Complaint appears to allege a claim for malicious prosecution under both state and federal law.  The Plaintiff was never prosecuted for any violation of Coosa County Jail Rules and Regulations, nor has he been prosecuted for any conduct or actions he has taken as a detainee in the Coosa County Jail since he was first incarcerated on June 22, 2006.  (Exhibit B, Affidavit of Terry Wilson, "Wilson Aff.," ¶ 8; Exhibit C, Affidavit of David Stover, "Stover Aff.," ¶ 6; Exhibit D, Affidavit of Mike Mull, "Mull Aff.," ¶ 8.)  The Plaintiff has not filed any grievance regarding any allegations that he committed a criminal offense.  (Wilson Aff., ¶ 15; Mull Aff., ¶ 14.)

A.    **The Plaintiff's Access to the Courts**

As noted above, the Plaintiff appears to allege a Sixth Amendment claim arising out of the delivery of his legal mail.  It is the policy of the Coosa County Jail that incoming inmate mail is screened for contraband.  (Wilson Aff., ¶ 9; Stover Aff., ¶ 7; Mull Aff., ¶ 9.)  It is the policy of the Coosa County Jail that all legal mail, including any correspondence from an inmate's attorney, the courts, or any public official, will be opened and inspected for contraband *only in the presence of the inmate*.  (Wilson Aff., ¶ 10; Stover Aff., ¶ 8; Mull Aff., ¶ 10.)

Lieutenant Stover has no knowledge of, or personal involvement in, any alleged tampering with the Plaintiff's incoming mail.  (Stover Aff., ¶ 12.)  Lieutenant Stover was notified that the Plaintiff had received mail that appeared to be a court document, and he was instructed to take the mail to the Plaintiff.  (Stover Aff., ¶¶ 9, 11.)  Upon receipt of the mail, Lieutenant Stover noticed that the envelope had been sealed with a piece of tape on the envelope flap.  (Stover Aff., ¶ 10.)  Lieutenant Stover took the mail to the Plaintiff and handed it to him. (Stover Aff., ¶ 11.)  The Plaintiff did not mention anything about the tape on the mail at the time he received it, nor did he make any further complaint to Lieutenant Stover about the mail.

(Stover Aff., ¶ 11.)  The Plaintiff has not filed any grievance regarding the alleged tampering with his legal mail.  (Wilson Aff., ¶ 15; Stover Aff., ¶ 13; Mull Aff., ¶ 14.)

**B.    The Coosa County Jail Grievance Policy**

It is the policy of the Coosa County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.  (Wilson Aff., ¶ 12; Mull Aff. ¶ 11.)  Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to the Jail Administrator.  (Wilson Aff., ¶ 13; Mull Aff. ¶ 12.)  The Jail Administrator will issue a written response to the inmate's grievance, and if the inmate is not satisfied with that response, he may appeal the grievance to the Chief Deputy Sheriff on another grievance form within 72 hours.  (Wilson Aff., ¶¶ 13-14; Mull Aff. ¶¶ 12-13.)  If the inmate is not satisfied with the Chief Deputy's response to his appeal, he may appeal that response to the Sheriff within 72 hours.  (Wilson Aff., ¶ 14; Mull Aff. ¶ 13.)  The Plaintiff has not filed a grievance, in accordance with the Coosa County Jail grievance policy, on any of the claims in his Complaint.  (Wilson Aff., ¶ 15; Mull Aff., ¶ 14.)

**II.    LAW**

**A.    The Plaintiff's claims are barred because he has failed to comply with the provisions mandated by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA").**

The Court's adherence to mandates of the PLRA is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by pro se litigants.  See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA').").  As the Supreme Court recently recognized in Jones v. Bock:

> Prisoner litigation continues to "account for an outsized share of filings" in federal district courts.  Woodford v. Ngo, 548 U.S. ----, ----, n.4, 126 S. Ct. 2378

4

(2006) (slip op., at 12, n.4).  In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations.[footnote omitted]  Most of these cases have no merit; many are frivolous.  Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law.  The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit.  See Neitzke v. Williams, 490 U.S. 319, 327 [] (1989).

Congress addressed that challenge in the PLRA.  What this country needs, Congress decided, is fewer and better prisoner suits.  See Porter v. Nussle, 534 U.S. 516, 524, [] (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits").  To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good.  ***Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.***

127 S. Ct. at 914 (emphasis added).  Uniform adherence to all the provisions of the PLRA, especially the grievance exhaustion requirement, is mandatory for inmate litigants and the courts to ensure that the federal judicial system can effectively "separate the wheat from the chaff" with regard to claims asserted by inmate litigants.

The first section of the PLRA provides:

***No action shall be brought*** with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility ***until such administrative remedies as are available are exhausted.***

42 U.S.C. § 1997e(a) (emphasis added).  Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted ***all*** his administrative remedies.  In Woodford v. Ngo, ___ U.S. ___; 126 S. Ct. 2378, 2382 (2006), the Supreme Court held, "Exhaustion is no longer left to the discretion of the district court, but is ***mandatory***."  See also Booth v. Churner, 532 U.S. 731, 739 (2001) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards.").  However, as the

Supreme Court recognized in <u>Jones v. Bock</u>, each prison sets its own parameters for what constitutes compliance with its grievance policy:

> In <u>Woodford</u>, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 [] – rules that are defined not by the PLRA, but by the prison grievance process itself…. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

127 S. Ct. at 922-23.

Here, the Plaintiff has not filed any grievance regarding any of the allegations in his Complaint. The Plaintiff has not complied with the provisions of the Coosa County Jail grievance policy, and he, therefore, cannot be deemed to have exhausted all available administrative remedies provided by the Coosa County Jail grievance policy, as is required by § 1997e(a) of the PLRA. Therefore, his claims must be dismissed.

**B.    All claims against these Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

The Plaintiff's claims against these Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a **person**, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claims against the Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

**C.   Alternatively, these Defendants are entitled to be dismissed based on absolute and qualified immunity.**

The Plaintiff's claims are barred on two additional immunity grounds.  First, these Defendants are absolutely immune to the Plaintiff's state law claim under Article I, § 14 of the Alabama Constitution of 1901 in both their official and individual capacities.  Second, in their individual capacities, these Defendants are entitled to qualified immunity to Plaintiff's federal claims.

**1.   These Defendants are entitled to absolute immunity from any state law claims the Plaintiff may have asserted in his Complaint.**

To the extent that this Court construes the Plaintiff's Complaint as alleging state law claims for malicious prosecution and/or defamation, these Defendants are absolutely immune to Plaintiff's state-law claims for money damages under Article I, § 14 of the Alabama Constitution of 1901.  Article I, § 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  This section grants the State and its agencies "absolute" immunity from suit in any court.  Ex parte Mobile County Dep't of Human Res., 815 So. 2d 527, 530 (Ala. 2001).  Section 14 immunity bars "almost every conceivable type of suit."  Hutchinson v. Bd. of Trustees of Univ. of Ala., 256 So. 2d 281, 283

(Ala. 1971). Section 14 immunity is "nearly impregnable." Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002).

By virtue of his position, Sheriff Wilson is an executive branch constitutional officer of the State of Alabama. See Article V, § 112 of the Alabama Constitution of 1901; see also McMillian v. Monroe County, 520 U.S. 781, 793 (1997) (holding that an Alabama sheriff acts for the state and not his county when carrying out law enforcement duties); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990). Therefore, a suit against him in his official capacity is a suit against the State of Alabama. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Similarly, because Lieutenant Stover acts for the Sheriff as a jail official, he is a state official for purposes of absolute immunity.

As executive branch, constitutional officers of the State, these Defendants are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. This section immunizes them from *all* state law claims, including constitutional claims, even though they are sued in their individual capacities. Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster, 116 F.3d at 1431 (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity. An Alabama sheriff is immune from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional

laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker, 519 So. 2d at 443.  Accordingly, even in situations where sheriffs and their employees are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to enjoin their conduct.  Alexander v. Hatfield, 652 So. 2d 1142, 1143 (Ala. 1994).  With only these narrow exceptions, Alabama sheriffs and their deputies are immune from suit.  Ex parte Purvis, 689 So. 2d at 796; Ex parte Blankenship, 893 So.2d 303, 305 (Ala. 2004).

Slightly over a year ago, the Alabama Supreme Court again affirmed that sheriffs and deputies enjoy absolute immunity to state law money damages claims.  Ex parte Davis, 930 So. 2d 497, 501 (Ala. 2005).  In Davis, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion to dismiss state law money damages claims.  930 So. 2d at 499.  Plaintiff's claims against the deputy included false imprisonment, assault and battery, outrage, wantonness, negligence, trespass, and conversion.  Id.  Granting the deputy's petition for a writ of mandamus and instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that "an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of his duties is essentially a suit against the state" and thereby barred under Article I, § 14 of the Alabama Constitution of 1901.  Id. at 501 (internal quotations and citations omitted).

Here, the Plaintiff has alleged that at all times relevant he was an inmate in the Coosa County Jail.  He has alleged that the actions taken by Sheriff Wilson and Lieutenant Stover were taken in their capacities as Sheriff and Lieutenant for the Coosa County Sheriff's Office.  It is only in those capacities that any of these men had any authority or reason to supervise the Plaintiff or control his movements in any way.  To the extent that the Complaint is construed to

9

request money damages, these Defendants are being sued for actions taken in the line and scope of their duties. Accordingly, any state-law claims for malicious prosecution or defamation are barred by Article I, § 14 of the Alabama Constitution of 1901.

> **2.    These Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

These Defendants were acting within their discretionary authority as the Sheriff of Coosa County and as an officer of the Coosa County Jail during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their duties. See, e.g.,Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004). All actions alleged in the Plaintiff's Complaint are governed by jail policy and are necessarily law enforcement activities. Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the Plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

> **a.    None of these Defendants have violated Plaintiff's federally protected rights.**

> **i.    Malicious Prosecution**

The record fails to support any claim for the Plaintiff's allegations that Sheriff Wilson falsely accused the Plaintiff of a crime. As discussed above, the only federal or state claims that could be construed from those allegations are claims for malicious prosecution. As the Supreme Court has recognized, "the extent to which a claim of malicious prosecution is actionable under § 1983 is one 'on which there is an embarrassing diversity of judicial opinion.'" Albright v. Oliver, 510 U.S. 266, 271 n.4 (U.S. 1994) (quoting Albright v. Oliver, 975 F.2d, at 345 (7th Cir.

1992) (internal citations omitted). The divergence of judicial opinion as to the existence of a federal claim for malicious prosecution, however, only relates to "whether malicious prosecutions, standing alone, can violate the Constitution," not the elements necessary to constitute a federal claim for malicious prosecution. Id. The very basis for a claim for malicious prosecution, as the name suggests, is the existence of an actual judicial proceeding. As the Eleventh Circuit has recognized:

> Under Alabama law, to prevail on a malicious prosecution claim, a plaintiff … must show: (1) a prior judicial proceeding was instituted by the defendant …; (2) the defendant acted without probable cause in the prior proceeding; (3) the defendant acted with malice in instituting the prior proceeding; (4) the prior proceeding ended in favor of the plaintiff; and (5) the plaintiff was damaged.

U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1290 (11th Cir. 2001) (citing Poff v. Hayes, 763 So. 2d 234, 240 (Ala. 2000); S.S. Kresge Co. v. Ruby, 348 So. 2d 484, 487-88 (Ala. 1977).

In the present case, the record reveals that Sheriff Wilson has not instituted any legal proceeding against the Plaintiff for his actions as a detainee at the Coosa County Jail. An accusation of criminal conduct, alone, cannot constitute a constitutional violation actionable under § 1983. Section 1983 is not a source of substantive rights; it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution. See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617-18 (1979) (holding that "one cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything."); Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979) (stating that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."); Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed.") (citations and

11

internal quotations omitted); Almand v. DeKalb County, 103 F. 3d 1510, 1512 (11th Cir. 1997) ("Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights"). Because this section is not a source of federal rights, the Plaintiffs' claims under § 1983 must be dismissed.

Without more, Sheriff Wilson's accusation that the Plaintiff committed a criminal offense did not violate any of the Plaintiff's constitutional rights. Accordingly, the Plaintiff has failed to allege any federal claim against Sheriff Wilson.

### ii.      Access to Courts

Further, the record fails to support the Plaintiff's claim that Lieutenant Stover tampered with his legal mail. The Eleventh Circuit has not addressed the constitutional implications of opening an inmate's incoming legal mail outside the presence of the inmate. However, to state a claim for denial of access to the courts, the Supreme Court has required an inmate to demonstrate the existence of an "actual injury" affecting his effort to pursue a nonfrivolous legal claim. Lewis v. Casey, 518 U.S. 343, 349 (1996) ("We agree that the success of respondents' systemic challenge was dependent on their ability to show widespread actual injury, and that the court's failure to identify anything more than isolated instances of actual injury renders its finding of a systemic Bounds violation invalid."). Additionally, interference with legal mail must have been an "ongoing activity," rather than an isolated incident. Plaintiff must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).

Here, the Plaintiff claims that Lieutenant Stover opened his legal mail. The evidence reflects that Lieutenant Stover did not, in fact, open the Plaintiff's legal mail. Rather, the envelope was sealed with tape when it arrived at the Jail. Even if the Plaintiff's legal mail had been opened, the Plaintiff has failed to allege any "actual injury" suffered as a result of the alleged opening of

his legal mail.  Neither does the Plaintiff allege any conduct on behalf of Sheriff Wilson or Lieutenant Stover that constituted a pattern and practice of interfering with the Plaintiff's incoming legal mail that could be construed as an "ongoing activity."  Even when interpreted in a light most favorable to Plaintiff, the record cannot support Plaintiff's claims against Lieutenant Stover for interference with Plaintiff's legal mail.

Furthermore, the Supreme Court's decisions in Thornburgh v. Abott, 490 U.S. 401 (1989) and Turner v. Safely, 482 U.S. 78 (1987) support the conclusion that, even if Lieutenant Stover  had opened the Plaintiff's legal mail outside the Plaintiff's presence, he did not violate any of Plaintiff's constitutional rights.  The Supreme Court precedent that preceded Thornburgh and Turner has been construed by some courts to require that incoming legal mail be opened in the presence of the inmate.  See Taylor v. Sterrett, 532 F.2d 462, 475 (5th Cir. 1979) (holding that an "inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts … be opened only in the presence of the inmate.").  However, Thornburgh and Turner have abrogated the portions of prior Supreme Court caselaw that supported a constitutional requirement that incoming legal mail be opened in the presence of the inmate.

In recognizing an inmate's right to have his incoming legal mail opened in his presence, pre-Thornburgh and Turner, courts relied upon Procunier v. Martinez, 416 U.S. 396 (1974), and Wolff v. McDonald, 418 U.S. 539 (1974), to the extent that those cases recognized that opening an inmate's legal mail implicated the First Amendment.  See, e.g., Sterrett, 532 F.2d at 565-66. These courts concluded that, under the First Amendment, prison regulations on incoming inmate mail must comply with the two-prong test for constitutionality: "First, prison authorities 'must strongly show some substantial and controlling interest which requires the subordination or limitation' of a prisoner's First Amendment rights and 'which justifies their infringement' …."

13

Second, those officials must demonstrate that legitimate government goals are achieved by the least restrictive, alternative means." Sterrett, 532 F.2d at 479 (emphasis added). Although these courts recognized "[t]he danger presented by this [incoming] mail is that physical contraband will enter the jail," under the least-restrictive-means prong, that danger could be alleviated by opening all incoming mail in the inmate's presence. See Sterrett, 532 F.2d at 480 ("Physical contraband, such as weapons, metal files, or drugs, can ordinarily be detected by manual manipulation of envelopes, by scanning with fluoroscopes and metal detectors, or by inspection in the inmate's presence.") (emphasis added).

In Thornburgh v. Abott, 490 U.S. 401 (1989) and Turner v. Safely, 482 U.S. 78 (1987), the United States Supreme Court abrogated the least-restrictive-means prong insofar as it applied to cases involving prison regulations on incoming inmate mail. It did so expressly in Turner, where the court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89 (emphasis added). In Thornburgh, the court recognized that the standard it set forth in Turner overruled the least-restrictive-means prong it set forth in Martinez.

> In [Turner] we recognize that it might have been possible to apply a reasonableness standard to all incoming materials without overruling Martinez: we instead could have made clear that Martinez does not uniformly require the application of a "least restrictive alternative" analysis. We choose not to go that route, however, for we prefer the express flexibility of the Turner reasonableness standard. We adopt the Turner standard in this case with confidence that, as petitioners here have asserted, "a reasonableness standard is not toothless."

490 U.S. at 414. In so holding, the Supreme Court expressly abrogated Martinez and Wolff, insofar as they applied the least-restrictive-means prong of the First Amendment constitutionality test to prison regulations on incoming inmate mail.

Overruling its prior adherence to the Supreme Court's application of the First Amendment's least-restrictive-means prong to prison regulations on incoming inmate mail, the

Fifth Circuit recognized this abrogation in <u>Brewer v. Wilkinson</u>, 3 F.3d 816 (5th Cir. 1993). In <u>Brewer</u>, the court noted that "<u>Sterrett's</u> requirement of the 'least restrictive means' and a 'substantial or important governmental interest' in the context of prison regulation of legal mail appears to have been modified. In <u>Thornburgh v. Abbott</u>, [citation omitted], the Supreme Court overturned <u>Martinez's</u> holding regarding <u>incoming</u> mail …." 3 F.3d at 823 (emphasis original). Accordingly, in <u>Brewer</u> the Fifth Circuit held that "the violation of the prison regulation requiring that a prisoner be present when his <u>incoming legal mail</u> is opened and inspected is not a violation of the prisoner's constitutional rights." 3 F.3d at 825 (emphasis added). The Fifth Circuit's revision of the constitutional standard it applies to prison regulation of incoming legal mail in light of <u>Thornburgh</u> and <u>Turner</u> illustrates the impact the Supreme Court's abrogation of <u>Martinez</u> and <u>Wolff</u> has had on the constitutional analysis of prison regulations on incoming inmate mail.

Because Lieutenant Stover did not open the Plaintiff's legal mail at all, much less outside the Plaintiff's presence, the Plaintiff cannot maintain an access to courts claim. And, even if he did open the Plaintiff's legal mail outside the Plaintiff's presence, Lieutenant Stover would not have violated the Plaintiff's Sixth Amendment rights so long as any such inspection was "reasonably related to legitimate penological interests."

> **b.    Neither the case law of the Eleventh Circuit or the United States Supreme Court, nor that of the Alabama Supreme Court, placed these Defendants on notice that their conduct would violate Plaintiff's "clearly established" federal rights.**

Even had the Plaintiff successfully stated a constitutional violation, he still bears the burden of showing that the state of the law provided these Defendants with "fair warning" that their conduct would violate the Plaintiff's "clearly established" federal rights. <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003). In determining whether the conduct of the Defendants was clearly established as violating the Plaintiff's constitutional rights, the reviewing

15

court must examine the state of the law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003), 354 F.3d at 1318 (quoting 28 F.3d at 1149).  As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'"  Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)).

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court.  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

### i.     Accusation of a Criminal Offense

As discussed above, the Plaintiff has not stated a claim against Sheriff Wilson for the mere accusation of a criminal offense, where there was no legal proceeding initiated.  However, even if this Court construed the Plaintiff's allegations as stating a claim for malicious prosecution, no United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court case has held that a sheriff may be held liable for accusing an inmate of a criminal offense, upon reasonable suspicion, when the inmate was not prosecuted for that offense.  Therefore, Sheriff

16

Wilson cannot be deemed to have violated the Plaintiff's "clearly established" rights under the existing caselaw.

### ii.    Access to Courts

As to the Plaintiff's claims for interference with his legal mail, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a sheriff or an officer of a sheriff's office may be held liable for opening a single piece of incoming legal mail.  Although the Fifth Circuit's decision in Sterrett is binding on the Eleventh Circuit, see Bonner v. City of Prichard, 661 F.2d 1206, 1210 (11th Cir. 1981) ("The decisions of the former Fifth Circuit, adopted as precedent by the Eleventh Circuit, will, of course, be subject to the power of the Eleventh Circuit sitting en banc to overrule any such decision."), the Eleventh Circuit has not had the occasion to apply the Fifth Circuit's principles in Sterrett to a case involving the screening of incoming inmate mail outside the presence of the inmate, nor has the Eleventh Circuit had the opportunity to evaluate the vitality of the rule in Sterrett in light of the Supreme Court's holdings in Thornburgh and Turner.  In light of the Fifth Circuit's abrogation of Sterrett in Brewer, it is unlikely that any court in the Eleventh Circuit will apply the standards enunciated in Sterrett to a case involving prison regulation of incoming inmate mail.  Therefore, even if Lieutenant Stover had opened the Plaintiff's legal mail outside his presence, which he did not, he cannot be deemed to have violated the Plaintiff's "clearly established" rights under the existing caselaw.

### c.    The text of the constitutional provisions that Plaintiff alleges were violated do not on their face prohibit the Defendants' conduct.

The Eleventh Circuit has recognized an alternate method for establishing that the Defendants had notice that their conduct was unlawful.  Accordingly, even where the Plaintiff cannot demonstrate that the caselaw provides these Defendants notice that their conduct violates his

constitutional rights, as is the case here, he can establish that these Defendants still had "fair warning" of the constitutional deficiencies of their conduct from the text of the constitutional provision in question.  In such a case, Plaintiff must either demonstrate that the pertinent federal statute or federal constitutional provision is specific enough on its face to prohibit the Defendants' conduct as unconstitutional, even in the total absence of caselaw.  Storck, 354 F.3d at 1317.  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  To establish this case as an "obvious clarity" case, Plaintiff must show that "the words of the pertinent federal statute or federal constitutional provision" establishing the federal right allegedly violated are "specific enough to establish clearly the law applicable to particular conduct" such that "case law is not needed to establish that the conduct cannot be lawful."  Vinyard, 311 F.3d at 1350.

Neither the text of the Eighth Amendment, nor the text of the Fourteenth Amendment on its face, prohibits the conduct of the Defendants in this case as unconstitutional.  Even if Plaintiff had alleged conduct that violated his constitutional rights, neither the relevant bodies of caselaw nor the text of the relevant constitutional provisions would have put these Defendants on notice that their conduct would have violated the Plaintiff's constitutional rights.

**D.      The Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.**

In order to establish a constitutional violation for conduct under § 1983, the Plaintiff must allege personal involvement on behalf of these Defendants.  The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Defendants and the constitutional deprivation.  Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995).  The requisite causal connection may be shown by the personal participation of the Defendants, a policy established by the Defendants resulting in indifference to constitutional rights or a breach of a duty

imposed state of local law which results in constitutional injury.  Zatler v. Wainwright, 802 F.2d

397 (11th Cir. 1986).

The Plaintiff has failed to allege that Sheriff Wilson was in any way personally involved in

the allegations surrounding the Plaintiff's claims.  The Plaintiff has offered no allegation

demonstrating that Sheriff Wilson was in any way involved in the conduct that the Plaintiff alleges

is unconstitutional.  There are absolutely no facts in the record to show that these Defendants

personally participated in the circumstances surrounding the Plaintiff's claims, nor does the Plaintiff

allege specifically how these Defendants violated his constitutional rights.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established

exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally
> participates in the alleged constitutional violation or when there is a causal
> connection between actions of the supervising official and the alleged
> constitutional deprivation.  The causal connection can be established when a
> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged deprivation, and he fails to do so.  The deprivations that
> constitute widespread abuse sufficient to notify the supervising official must be
> "obvious, flagrant, rampant and of continued duration, rather than isolated
> occurrences."  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations
> omitted).

193 F.3d at 1269.  The causal connection may also be established where the supervisor's

improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."

Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d

397 (11th Cir. 1986)).  In light of the applicable law, Plaintiff's allegations are insufficient to

create liability on the part of the Defendants.  As such, all the Plaintiff's claims against Sheriff

Wilson are due to be dismissed.

###    E.    There is no *respondeat superior* liability under 42 U.S.C. § 1983.

Because the Plaintiff's Amended Complaint contains no allegations demonstrating that

Sheriff Wilson was in any way involved in the actions he claims were constitutionally infirm, the

Plaintiff's § 1983 claim is based upon nothing more than *respondeat superior* and fails to state a claim for which relief may be granted against these Defendants.  Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

> 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between plaintiff and the actions of a putative defendant.  Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 30 years ago.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).  In Monell, the court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  Accordingly, as both the explicit text of § 1983 and the opinions of the United States Supreme Court forbid vicarious liability, the Plaintiff's *respondeat superior* claims must fail.

## CONCLUSION

Sheriff Wilson and Lieutenant Stover deny each and every allegation made by Plaintiff, James Earle Crenshaw, in his Complaint.  These Defendants have not acted in a manner so as to deprive the Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Sheriff Wilson and Lieutenant Stover respectfully request that this Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 8th day of October, 2007.

**s/Joseph L. Hubbard, Jr.**
JOSEPH L. HUBBARD, JR., Bar Number HUB015
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  jhubbard@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 8th day of October, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

James Earle Crenshaw
Coosa County Jail
P. O. Box 279
Rockford, Alabama  36420

**s/Joseph L. Hubbard, Jr.**
OF COUNSEL

# Exhibit A
# Inmate Records of James Earl Crenshaw, Arrest & Booking Report

☑ STATE OF ALABAMA
☐ MUNICIPALITY OF _____

_____
Case Number

v.

*Crenshaw James Earl*
_____
Defendant

STATE OF ALABAMA

In the _____ *District* _____ Court of
_____ *Crosar* _____ County
[The City/Town of _____ *Rockford* _____ ]

The defendant, _____ *Top 1st* _____ *James Crenshaw* _____, charged with the criminal offenses (s)
of _____, was duly brought before
the _____ *District* _____ Court for Initial Appearance at _____ *12-30* _____ o'clock _P_.M., _6-22_
19 _06_, whereupon the Court:

*(CHECK AS APPLICABLE):*

1.  ☑ Ascertained the true name and address of the defendant to be:  *Gda Street 30th Street N*
    *Birmingham Al.*

    _____
    *605 5th place*
    *Birmingham Ala.*
    *35214*

    *AND*

    ☐ Amended the formal charges to reflect defendant's true name; and
    ☐ Instructed the defendant to notify the court promptly of any change of address.

2.  ☐ Informed the defendant of the charges against him/her and ensured that the defendant was served with a copy of the charges.

3.  ☐ Informed the defendant of the right to be represented by counsel, and that he/she would be afforded time and opportunity to retain an attorney, and further advised the defendant that, if he/she was indigent and unable to obtain counsel, an attorney would be appointed by the Court to represent him/her.

4.  ☑ Informed the defendant that he/she had the right to remain silent and that anything that he/she said could be used against him/her.

5.  ☐ Determined that the defendant shall not be released from custody since charged with a non-bailable capital offense:

    *OR*

    ☐ Determined that the defendant may be released from custody pending further proceedings, subject to the mandatory conditions prescribed in Rule 7.3(a), A.R.Crim.P., and subject to the following additional conditions:

    ☐ Execution of an appearance bond in the amount of $_____.
    ☐ Upon deposit with the clerk of the court of cash or certified funds equal to _____ percent of the amount of the bond in the amount of $_____.
    ☑ Execution of a secured appearance bond in the amount of $ *25 000*.
    ☐ Other conditions (specify) _____
    _____
    _____
    _____

6.  ☐ Informed the defendant of the right to demand a preliminary hearing under Rule 5.1, A.R.Crim.P., and of the procedure by which that right may be exercised, and

7.  ☐ If demanded by the defendant, set preliminary hearing to be held in the District Court of _____ County at _____ *9:00* _____ o'clock _A_ .M., on _____ *August 16* _____
    19 _06_.

    *OR*

    ☐ Notified the District Court of _____ County that such demand was made.

Date: _6-22-06_

_____
Judge/Magistrate

# COOSA COUNTY S.O.

## SUICIDE WATCH CHECK REPORT

**NAME:** Crenshaw, James

**DATE:** 5-15-67

| TIME | :00 CHECK INITIALS | :15 CHECK INITIALS | :30 CHECK INITIALS | :45 CHECK INITIALS |
|------|-------------------|-------------------|-------------------|-------------------|
| 2400 | ✓ | ✓ | ✓ | ✓ |
| 0100 | | | TMT | TMT |
| 0200 | TMT | TMT | TMT | TMT |
| 0300 | TMT | TMT | TMT | TMT |
| 0400 | TMT | TMT | TMT | TMT |
| 0500 | TMT | TMT | TMT | TMT |
| 0600 | | | | |
| 0700 | | | | |
| 0800 | | | | |
| 0900 | | | | |
| 1000 | | | | |
| 1100 | | | | |
| 1200 | | | | |
| 1300 | | | | |
| 1400 | | | | |
| 1500 | | | | |
| 1600 | | | | |
| 1700 | | | | |
| 1800 | | | | |
| 1900 | | | | |
| 2000 | | | | |
| 2100 | | | | |
| 2200 | | | | |
| 2300 | | | | |

COOSA COUNTY SHERIFF'S OFFICE

INMATE INFORMATION SHEET                    Page      1

BOOKING NO:   060000322                          LOCAL ID:   060000322

Name    : CRENSHAW JAMES EARL

Address: 920 SHORT 30TH ST N

City    : BIRMINGHAM      State: AL Zip:



## Physical Description

Race :  **BLACK**              Hair :  **BLACK**

Gender:  **MALE**              Eyes:  **BROWN**

Height:  **5 ' 08 "**         Complexion:  **FAIR**

Weight:  **140**              DOB:  **11/17/1970**    Age: **35**

Scars/Tattoos:

## Personal Information

DL State :              Home Phone:  **256 798 3441**

DL Number:              Work Phone:

SSN:  **421 02 0670**

SID:

## Booking Information

Arrest Date: **06/21/2006**       Booking Officer: **THOMAS**

Arrest Dept: **CCSO]**            Booking Date: **06/22/2006**

Arrest Offcr: **HARRIS**          Booking Time: **06:02**

Search Offcr: **THREATT**             Facility: **01**

Meal Code: **01**            Cell Assignment: **C-FLOOR**

## Charge Information

| Offense | Fine | Bond | Disposition |
|---|---|---|---|
| THEFT OF PROPERTY 1ST | $00.00 | | PENDING |

```
                        COOSA COUNTY SHERIFF'S OFFICE
06/22/2006    06:10:37          INMATE BOOKING SHEET              PAGE    1
=============================================================================
BOOKING NO: 060000322

INMATE NAME: CRENSHAW JAMES EARL
       ALIAS:                              RACE: B       SEX: M
       ALIAS:                                HT: 5'08"  HAIR: BLK
     ADDRESS: 920 SHORT 30TH ST N            WT: 140    EYES: BRO
 CITY/ST/ZIP: BIRMINGHAM, AL             COMPLEX: FAR
  HOME PHONE: 256-798-3441                   SSN: 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
         DOB: 11/17/1970  AGE:  35         DL ST:         DLN:
  PLCE BIRTH: BIRMINGHAM                     SID:
       STATE: AL                           LOCID: 060000322
   M. STATUS:
    RELIGION:
 GANG ASSOC:
SCARS/TATTOOS: TAT ON RT ARM AND TAT ON LT ARM
KNOWN ENEMIES:
     REMARKS:
------------------------------ NEXT OF KIN -----------------------------------
 NEXT OF KIN: CREWSHAW JEANEVA          RELATIONSHIP: GRANDMOTHER
     ADDRESS: 920 SHORT 30TH N                 PHONE: 000-000-0000
 CITY/ST/ZIP: BIRMINGHAM, AL
     REMARKS:
------------------------------ EMPLOYER INFO ---------------------------------
    EMPLOYED: N
EMPLOYER NAME:
     ADDRESS:
 CITY/ST/ZIP: ,
       PHONE: 000-000-0000
------------------------------ MEDICAL ---------------------------------------
  HANDICAPPED: N   NEEDS:
     GLASSES: N   SMOKE: Y
MEDICAL NEEDS: N   NEEDS:
   PHYSICIAN:                      PHONE: 000-000-0000
     REMARKS:

     REMARKS:
     REMARKS:
------------------------------ PROPERTY --------------------------------------
        CASH:      $00.00
 DESCRIPTION:
ADD. PROPERTY: CD PLAYER BLU JEAN PANTS RED AND WHIT TENN
ADD. PROPERTY:
ADD. PROPERTY:
  BIN NUMBER:
VEH IMPOUNDED:
 IMPOUND LOT:
     REMARKS:
     REMARKS:
=============================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.
```

INMATE: _(signature)_ DATE: _____ TIME: _____

BOOK OFFICER _(signature)_ DATE: 6-22-06 TIME: 610

```
                          COOSA COUNTY SHERIFF'S OFFICE
06/22/2006     06:10:37        INMATE BOOKING SHEET                    PAGE    2
================================================================================
BOOKING NO: 060000322    INMATE NAME: CRENSHAW JAMES EARL
================================================================================
           COURT: DISTRICT            ATTORNEY ON REC:
           JUDGE: TEEL                          PHONE: 000-000-0000
         REMARKS:
         REMARKS:
--------------------------------------------------------------------------------
   BOOK DATE: 06/22/2006  BOOK TIME: 06:02  BOOK TYPE: NORMAL

   ARREST DATE: 06/21/2006            BOOKING OFFICER: THOMAS
   ARREST DEPT: CCSO]                 CELL ASSIGNMENT: C-FLOOR
 ARRST OFFICER: HARRIS                      MEAL CODE: 01   COOSA COUNTY
 PROJ. RLSDATE: 00/00/0000                   FACILITY: 01   COUNTY JAIL
 SEARCH OFFCR: THREATT                 CLASSIFICATION:
  TYPE SEARCH: STRIP                     WORK RELEASE: N
INTOX RESULTS:

         HOLDS: N
        AGENCY:              REASON:
        AGENCY:              REASON:
        AGENCY:              REASON:
        AGENCY:              REASON:

         NOTES:
         NOTES:
         NOTES:
```

```
                          COOSA COUNTY SHERIFF'S OFFICE
06/22/2006    06:10:37       INMATE CHARGE SHEET                        PAGE    3
================================================================================
BOOKING NO: 060000322    INMATE NAME: CRENSHAW JAMES EARL
================================================================================
   CHARGE NO:   1  DISPOSITION: PENDING           HOLD: N

ALA STATUTE: 13-A-8-3              # OF COUNTS:    0
     OFFENSE: THEFT OF PROPERTY 1ST   WARRANT #:
      CASE #: 060600317
    BOND AMT:                              FINE:        $0.00
    BAIL AMT:
INIT APPEAR: 00/00/0000       SENTENCE DATE: 00/00/0000
RELEASE DTE: 00/00/0000
ARREST DATE: 06/21/2006          ARST AGENCY: CCSO
ARST OFFICR: HARRIS                   COUNTY: COOSA
      COURT: DISTRICT                  JUDGE: TEEL
DEF ATTORNY:                     DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
--------------------------------------------------------------------------------
```

# Exhibit B
# Affidavit of Terry Wilson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **JAMES EARL CRENSHAW,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:07-cv-00793-MHT-CSC** |
| | ) |
| **COOSA COUNTY JAIL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT OF TERRY WILSON

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COOSA** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Terry Wilson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Terry Wilson. I am over the age of nineteen and competent to make this affidavit.

2.      I am currently serving as the Sheriff of Coosa County. I have served in that position since taking office in January, 2007. Prior to that, I served as the Jail Administrator for the Coosa County Jail from January, 2003, to August, 2004. Prior to that, I served as a Deputy Sheriff at the Coosa County Jail from July, 1995, to January 2003. I have a total of ten years of law enforcement experience.

3.      I am familiar with James Earl Crenshaw because he was incarcerated in the Coosa County Jail when I took office in January of 2007.

4.      Mr. Crenshaw is a detainee in the Coosa County Jail and is currently awaiting trial for one count of theft of property in the first degree.

1

5.    I have read Mr. Crenshaw's Complaint and have personal knowledge of the facts underlying the Plaintiff's allegations.

6.    I am aware that Mr. Crenshaw alleges in his Complaint that I accused him of breaking the law, and that he alleges in his Complaint that Lieutenant Stover opened his legal mail outside of his presence.

7.    Mr. Crenshaw has not been prosecuted for any conduct or actions he has taken as a detainee in the Coosa County Jail since I took office as Sheriff in January, 2007.

8.    To my knowledge, Mr. Crenshaw has not been prosecuted any conduct or actions he has taken as a detainee in the Coosa County Jail since he was first incarcerated.

9.    It is the policy of the Coosa County Jail that all that incoming inmate mail, with the exception of legal mail, be screened for contraband.  The purpose of this policy is to ensure the safety and security of the jail, the jail staff, and the inmates.

10.    It is the policy of the Coosa County Jail that all legal mail, including any correspondence from an inmate's attorney, the courts, or any public official, will be opened and inspected for contraband in the presence of the inmate.

11.    To my knowledge, Lieutenant Stover did not open Mr. Crenshaw's legal outside of his presence.  If he had, it would have been in violation of Coosa County Jail policy.

12.    It is the policy of the Coosa County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.

13.    Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to the Jail Administrator, who will issue a written response to the inmate's grievance.

14.    If an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the Chief Deputy Sheriff within 72 hours of receiving the response.    The Chief Deputy

Sheriff will have 72 hours from the date of the appeal to investigate the matter and issue a response. If an inmate is dissatisfied with the response he receives from the Chief Deputy Sheriff, he may appeal, in writing, within 72 hours of receiving the response, to the Sheriff, who will have 72 hours from the date of the appeal to investigate the matter and issue a response.

15.    Mr. Crenshaw never filed a grievance concerning any of the allegations in his Complaint.

16.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the _5^th_ day of October, 2007.

_Terry Wilson_
TERRY WILSON

**SWORN TO** and **SUBSCRIBED** before me this _6_ day of October, 2007.

_Gwenn Ashworth_
NOTARY PUBLIC

My Commission Expires: _8/2/011_

3

# Exhibit D
# Affidavit of Mike Mull

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JAMES EARL CRENSHAW,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 2:07-cv-00793-MHT-CSC** |
| | ) |
| **COOSA COUNTY JAIL, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### AFFIDAVIT OF MIKE MULL

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COOSA** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Terry Wilson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Mike Mull. I am over the age of nineteen and competent to make this affidavit.

2.      I am the Jail Administrator for the Coosa County Jail. I have served in that position since March of 2007. Prior to that, I served as a Dispatcher and Jailer for the Sylacauga Police Department from 2000 to 2007. Prior to that I served as a Military Police Officer with the United States Army from 1994 to 1999. I have a total of thirteen years of law enforcement experience.

3.      I am familiar with James Earl Crenshaw because he has been incarcerated in the Coosa County Jail since I started working at the Coosa County Jail.

4.      I have read Mr. Crenshaw's Complaint and have personal knowledge of the facts underlying the Plaintiff's allegations.

1

5.    Since his incarceration in the Coosa County Jail, the Plaintiff submitted several inmate request forms in which he expressed an interest in becoming an inmate worker.

6.    The Plaintiff was awarded the privilege of inmate worker status.

7.    Three months after gaining inmate worker status, the Plaintiff's inmate worker status was revoked due to evidence that he was using his inmate worker status to smuggle contraband into the jail.

8.    Mr. Crenshaw has not been prosecuted for any conduct or actions he has taken as a detainee in the Coosa County Jail since he was first incarcerated on June 22, 2006.

9.    It is the policy of the Coosa County Jail that all that incoming inmate mail, with the exception of legal mail, be screened for contraband. The purpose of this policy is to ensure the safety and security of the jail, the jail staff, and the inmates.

10.    It is the policy of the Coosa County Jail that all legal mail, including any correspondence from an inmate's attorney, the courts, or any public official, will be opened and inspected for contraband in the presence of the inmate.

11.    It is the policy of the Coosa County Jail that all inmates are permitted to submit grievances to the jail administration and that each grievance will receive a response.

12.    Inmate grievance forms are made available to inmates upon request, and upon completion, they should be delivered to the Jail Administrator, who will issue a written response to the inmate's grievance.

13.    If an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the Chief Deputy Sheriff within 72 hours of receiving the response. The Chief Deputy Sheriff will have 72 hours from the date of the appeal to investigate the matter and issue a response. If an inmate is dissatisfied with the response he receives from the Chief Deputy

2

Sheriff, he may appeal, in writing, within 72 hours of receiving the response, to the Sheriff, who will have 72 hours from the date of the appeal to investigate the matter and issue a response.

14.    Mr. Crenshaw never filed a grievance concerning any of the allegations in his Complaint.

15.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 5th day of October, 2007.

MIKE MULL

**SWORN TO** and **SUBSCRIBED** before me this 5th day of October, 2007.

NOTARY PUBLIC

My Commission Expires: 8/2/011

3

# Exhibit E
# Inmate File of James Earl Crenshaw

```
                    COOSA COUNTY SHERIFF'S OFFICE
06/22/2006    06:10:37    MEDICAL SCREENING FORM                PAGE 1
=====================================================================
Booking No: 060000322  Date: 06/22/2006  Time: 06:02  Type: NORMAL
Agency to Bill: COOSA COUNTY              Facility: COUNTY JAIL
```

Inmate Name: CRENSHAW JAMES EARL                    Race: B        Sex: M
DOB: 11/17/1970 Age: 35  SSN: 421 02 0670  Height: 5'08"  Weight: 140

1. Is inmate unconscious?

2. Does inmate have any visible signs of trauma, illness, obvious pain and bleeding, requiring immediate emergency or doctor's care?

3. Is there obvious fever, swollen lymph nodes, jaundice or other evidence of infection that might spread through the facility?

4. Any signs of poor skin condition, vermin, rashes or needle marks?

5. Does inmate appear to be under the influence of drugs or alcohol?

6. Any visible signs of alcohol or drug withdrawal?

7. Does inmate's behavior suggest the risk of suicide or assault?

8. Is inmate carrying any medication?

9. Does the inmate have any physical deformities?

10. Does inmate appear to have psychiatric problems?

11. Do you have or have you ever had or has anyone in your family ever had any of the following?

   a. Allergies          f. Fainting Spells       k. Seizures

   b. Arthritis          g. Hearing Condition      l. Tuberculosis

   c. Asthma             h. Hepatitis              m. Ulcers

   d. Diabetes           i. High Blood Pressure    n. Venereal Disease

   e. Epilepsy           j. Psychiatric Disorder   o. Other (Specify)

Other: _____

_____

_____

12. For females only:

   a. Are you pregnant?

   b. Do you take birth control pills?

   c. Have you recently delivered?

COOSA COUNTY SHERIFF'S OFFICE
06/22/2006    06:10:37    MEDICAL SCREENING FORM                    PAGE 2
==============================================================================
Booking No: 060000322  Date: 06/22/2006   Time: 06:02   Type: NORMAL
Agency to Bill: COOSA COUNTY                Facility: COUNTY JAIL

Inmate Name: CRENSHAW JAMES EARL                    Race: B        Sex: M
    DOB: 11/17/1970 Age:  35  SSN: 421 02 0670  Height: 5'08"  Weight: 140
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

13.  Have you recently been hospitalized or treated by a doctor?

14.  Do you currently take any non-prescription medication or medication
     prescribed by a doctor?

15.  Are you allergic to any medication?

16.  Do you have any handicaps or conditions that limit activity?

17.  Have you ever attempted suicide or are you thinking about it now?

18.  Do you regularly use alcohol or street drugs?

19.  Do you have any problems when you stop drinking or using drugs?

20.  Do you have a special diet prescribed by a physician?

21.  Do you have any problems or pain with your teeth?

22.  Do you have any other medical problems we should know about?

I HAVE READ THE ABOVE ACCOUNTING OF MY MEDICAL ASSESSMENT AND I FIND IT TO BE
TRUE AND ACCURATE.

INMATE: _____    DATE: _____    TIME: _____

BOOK OFFICER: _A. Sherman_____    DATE: _6-22-06_    TIME: _6) 0_

COOSA COUNTY SHERIFF'S OFFICE

06/22/2006    06:10:37    MEDICAL SCREENING FORM    PAGE 3
==================================================================
Booking No: 060000322  Date: 06/22/2006  Time: 06:02  Type: NORMAL
Agency to Bill: COOSA COUNTY           Facility: COUNTY JAIL

Inmate Name: CRENSHAW JAMES EARL                Race: B      Sex: M
    DOB: 11/17/1970 Age:  35  SSN: 421 02 0670  Height: 5'08"  Weight: 140
------------------------------------------------------------------

### BEDDING/HYGIENE ISSUE FORM

1) _____  *Received tumbler   ($ 2.00 value)*

2) _____  *Received pillow    ($15.00 value)*

3) _____  *Received mattress ($30.00 value)*

4) _____  *Received blanket  ($15.00 value)*

5) _____  *Received Inmate Handbook ($5.00 value)*

6) _____  *Received personal hygiene items*

*Inmates will be charged the value of each item not received back in good condition at the time they are booked out of the Coosa County Jail.*

### NOTICE TO INMATES

*The Coosa County Jail will charge a co-pay for any and all medical services received through the Coosa County Jail.*

**The co-pays are:    $10.00 - Doctor visit   (each)**
**                    $ 3.00 - Prescription  (each)**
**                    $ 7.00 - Dentist Visit (each extraction only)**

I HAVE READ AND UNDERSTAND THE ABOVE NOTICES REGARDING CHARGES FOR DAMAGED PROPERTY AND MEDICAL SERVICES THAT I MAY INCCURE AT THE COOSA COUNTY JAIL.

INMATE: _____ DATE: _____  TIME: _____

BOOK OFFICER: _____ DATE: 6-22-06  TIME: 610

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshew_    CELL: _K-101_

DATE: _8-12-02_    TIME: _8:56 pm_

Please check one of the following:

_✓_ Medical    _____ Commissary    _____ Grievance    _____ Other

Briefly state your request or list your commissary items below"

_I need to go to the_
_dentist please_
_I have a teeth needs to be pull_

Inmate's signature _James Crenshew_

Do not write below—for reply only

_Appt. already made,_

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Earl Crenshaw_    CELL: _A-101_

DATE: _8-7-07_    TIME: _8:39 p.m_

Please check one of the following:

_✓_ Medical    _____ Commissary    _____ Grievance    _____ Other

Briefly state your request or list your commissary items below:

_I would like to go to the dentist please. I have a tooth that needs to be pull ball. I have a hole in it so I needs to go bad..._

_Thank you_

Inmate's signature _James Earl Crenshaw_

Do not write below—for reply only

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Earl Crenshaw   CELL: A-101

DATE: 8-8-07   TIME: 7:24 AM

Please check one of the following:

✓ Medical _____ Commissary _____ Grievance _____ Other

Briefly state your request or list your commissary items below"

I need to go to the dentist,
I have a teeth, thats needs to
be pull.

T Hank you

Inmate's signature _James Earl Crenshaw_

Do not write below—for reply only

APPT MADE

Signature of Jail Officer receiving original request:

# Coosa County Sheriff's Department

## DOCTOR VISIT – RX FORM

DATE _2-16-07_

INMATE NAME _James Crenshaw_

COMPLAINT _Tooth Ache_

DOCTOR'S NAME _Dentist_

NUMBER OF PRESCRIPTIONS _8_

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Crenshaw      CELL: A-101

DATE: 2-7-07      TIME: 8:55 Am

Please check one of the following:

✓ Medical      _____ Commissary      _____ Grievance      _____ Other

Briefly state your request or list your commissary items below"

I need to go to the dentist
I have a teeth needs to be
pull or feel.
                    THank you

Inmate's signature _James Crenshaw_

Do not write below—for reply only

Noted    App. will be Made
Has App.    App. 2260

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Crenshaw    CELL: A-101

DATE: 1-16-07    TIME: 7:52

Please check one of the following:

_____Medical    _____Commissary    _____Grievance    _____Other

Briefly state your request or list your commissary items below"

Mr. Wilson

I would like to be a hall runner.

Trustee    Thank you

Inmate's signature: Edward Crenshaw

Do not write below—for reply only

No Trustee Needed at This Time

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James E. Crenshaw    CELL: B-103

DATE: 12-30-06    TIME:

Please check one of the following:

✓ Medical    ⟋ Commissary    _____ Grievance    _____ Other

Briefly state your request or list your commissary items below"

Mr. Whitehead
I'm requesting to go to the
dentist I have a teeth needs
to be pull.
                    Thank you

Inmate's signature _James Crenshaw_

Do not write below—for reply only

will Make Appointment

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshaw_          CELL: _B-103_

DATE: _12-25-06_          TIME: _8:40 Pm_

Please check one of the following:

_✓_ Medical    _____ Commissary    _____ Grievance    _____ Other

Briefly state your request or list your commissary items below:

_Im requesting to go to the dentist. I have a teeth needs to be pull. Thank you_

Inmate's signature _James Crenshaw_

Do not write below——for reply only

_Will Make Appointment_

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshaw_    CELL: _B-103_

DATE: _12-25-06_    TIME: _8:40_

Please check one of the following:

_____Medical    _____Commissary    _____Grievance    _✓_Other

Briefly state your request or list your commissary items below"

I would like (or) should I say
I would love to be a hall runner.

Thank you

Inmate's signature _James Crenshaw_

Do not write below—for reply only

_Noted 12/26/06_

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshaw_          CELL: _B-103_

DATE: _11-29-06_          TIME: _2:10 p.m_

Please check one of the following:

_____Medical     _____Commissary     _____Grievance     ✓ Other

Briefly state your request or list your commissary items below"

I would like to be a
Trustee
Thank you

Inmate's signature _James Crenshaw_

Do not write below—for reply only

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: *James E. Crenshaw*          CELL: *B-103*

DATE: *10-16-06*                TIME: *9:37 P.M*

Please check one of the following:

_____Medical      _____Commissary      _____Grievance      ✓ Other

Briefly state your request or list your commissary items below"

*Mr. Whitehead*
*I would like to be a*
*hall runner, Trustee what ever, I*
*willing to work laundry, kitchen, anywhere.*
*Thank you*

*James Crenshaw*

Inmate's signature *James Crenshaw*

Do not write below—for reply only

*Noted*

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Earl Crenshaw  CELL: B-103

DATE: October 3,06          TIME: 9:10 P.m.

Please check one of the following:

_____ Medical    _____ Commissary    _____ Grievance    ☒ Other

Briefly state your request or list your commissary items below"

Mr. Whitehead
I would like to be a hall runner, sense Im
going to be here for awhile. I'm a good worker
mr. whitehead. Im willing to work anywhere
laundry, Kitchen, the hall, Painting, Anything sir.
Thank you

Mr James Earl Crenshaw

Inmate's signature

Do not write below for reply only

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James E. Crenshaw    CELL: D-101

DATE: 5-2-07                    TIME: 6:20 P.m

Please check one of the following:

_____Medical    _____Commissary    _____Grievance    ✓ Other

Briefly state your request or list your commissary items below"

Mr. Stover
I would like to be
place on work release

Thank you

Inmate's signature _James Crenshaw_

Do not write below—for reply only

Unable due to previous violations

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE DISCIPLINARY REPORT

NAME OF INMATE: James Crenshaw

DATE OF OCCURRENCE: 7/30/07

CORRECTION OFFICER ON DUTY: Coward/Mancil

INCIDENT: Upon delivery of mop buckets, Crenshaw began yelling through the door to D Block. When mop buckets were picked up, he began yelling again. I asked Officer Mancil to advise subject to not yell through the doors.

DAMAGE TO PROPERTY (LIST ITEMS AND APPROX VALUE)

REVIEWED BY:
ADMIN MULL_____          LT STOVER_____

ACTION TAKEN: Warned. - Cannot take much action, inmate doesn't receive any visitors. I am requesting Sgt. or Lt. to talk to inmate about following rules.

Coward

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Crenshaw         CELL: A-101

DATE: 2-6-07                 TIME: 6:30 a.m

Please check one of the following:

_____ Medical    _____ Commissary    _____ Grievance    _✓_ Other

Briefly state your request or list your commissary items below"

I would like to be a Trustee,
a Cook, loundry worker, anything.
I been here 7½ months.

Thank you

Inmate's signature James E Crenshaw

Do not write below—for reply only

Noted/08

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
## INMATE DISCIPLINARY REPORT

NAME OF INMATE: James Crenshaw

DATE OF OCCURRENCE: 7/12/07

CORRECTION OFFICER ON DUTY: Cowart

INCIDENT: While picking trays up from D Block, Mr. Crenshaw came to the door of A & began yelling across the hall to Jackie Westbrooks. I advised him to step away from the door.

- This will be my only warning.

DAMAGE TO PROPERTY (LIST ITEMS AND APPROX VALUE)

REVIEWED BY:
ADMIN MULL_____          LT STOVER_____

ACTION TAKEN: Warned to not do this again. - Further actions will include poss. lockdown if yiout

Cowart

# COOSA COUNTY JAIL
## INMATE DISCIPLINARY REPORT

NAME OF INMATE: _Crenshaw, James_

DATE OF OCCURRENCE: _7-16-07_

CORRECTION OFFICER ON DUTY: _CO Lipscomb / Marcel_

INCIDENT: _At 1920 hrs - heard yelling at Mr. Westbrooks through the door. They both have been told repetly not to do that. I am not going to put up with any longer - feel that something needs to be done!_
_#1941 hrs had to ____ willn (Crenshaw) a personal time - we cant move him to holding at this time._

DAMAGE TO PROPERTY (LIST ITEMS AND APPROX VALUE)_____
_____
_____
_____

REVIEWED BY:
ADMIN MULL_____            LT STOVER _08_

ACTION TAKEN:
_____
_____ _Spoke with Crenshaw & Westbrooks_
_____

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Crenshaw    CELL: A-101

DATE: 6-27-07    TIME: 7:45 PM

Please check one of the following:

_____ Medical    _____ Commissary    _____ Grievance    _____ Other

Briefly state your request or list your commissary items below"

Mr. Wilson
I'm wishing to have a word
or two, with you please Sir.

Thank You

Inmate's signature: _James Crenshaw_

Do not write below—for reply only

pass to slemsle

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshaw_    CELL: _A-101_

DATE: _6-27-07_    TIME: _5:30 PM_

Please check one of the following:

_____Medical    _____Commissary    _✓_ Grievance    _____Other

Briefly state your request or list your commissary items below"

_Lt. Stover_
_I wish to talk with I was told_
_to put this slip in._
_Thank you_

Inmate's signature _James Crenshaw_

Do not write below—for reply only

_Spoke with A Block for Cleaning_

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
## INMATE DISCIPLINARY REPORT

NAME OF INMATE: _James Crenshaw_

DATE OF OCCURRENCE: _5/4/07_

CORRECTION OFFICER ON DUTY: _Jackson 2253_

INCIDENT: _Told D-Block @ 1430 ⬛⬛⬛⬛ it was headcount and lockout informed Crenshaw to put his shirt on, Crenshaw didn't respond. I told them headcount and lockout a second time and informed Crenshaw again to put his shirt on. I told other individuals to get off the balcony. And all other Individuals responded._

DAMAGE TO PROPERTY (LIST ITEMS AND APPROX VALUE) _NONE_

REVIEWED BY:
ADMIN MULL ✓

SGT McCOOK_____

ACTION TAKEN: _23 hour Holding For Minor Rule Violation_
_M. Mull_

# COOSA COUNTY JAIL
## INMATE DISCIPLINARY REPORT

NAME OF INMATE: _James Crenshaw_

DATE OF OCCURRENCE: _4/24/07_

CORRECTION OFFICER ON DUTY: _Al Bradley_

INCIDENT: _Mr Crenshaw was asked why he put all the blankets on the floor and replied that I told him to - that never happened - Mr Crenshaw continued to argue about what he was told. This all stems around cigarette / Tobacco found and the blankets - Matter looked down and [Dale] Placed in A. Block. The Sheriff, Chief Deputy & Jail Admin were Notified. —_

DAMAGE TO PROPERTY (LIST ITEMS AND APPROX VALUE) _____

_____

_____

_____

_____

REVIEWED BY:
ADMIN MULL_____          SGT McCOOK_____

ACTION TAKEN: _Recommend to be removed from Trustee Position_

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: James Crenshaw     CELL: A-101

DATE: 1-18-07     TIME: 8:50 Pm

Please check one of the following:

_____Medical     _____Commissary     _____Grievance     ✓ Other

Briefly state your request or list your commissary items below"

I would like to be a Trustee

Thank you

Inmate's signature James Crenshaw

Do not write below---for reply only

Noted. No Trustees Needed at this Time

Signature of Jail Officer receiving original request:

# COOSA COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _James Crenshaw_     CELL: _C-103_

DATE: _8-4-06_     TIME: _____

Please check one of the following:

_____Medical     _____Commissary     _____Grievance     _____Other

Briefly state your request or list your commissary items below"

_I would like to be a Cook._
_I was a Cook at Out Back Steak house_
_is Auburn, And Country Bar B, Que in_
_Auburn, Also a Prison Cook for 10 years_

Inmate's signature _James Crenshaw_

Do not write below—for reply only

Signature of Jail Officer receiving original request:

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES EARL CRENSHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No.  2:07-cv-00793-MHT-CSC |
| | ) | |
| **COOSA COUNTY JAIL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF DAVID STOVER**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF COOSA** | ) |

**BEFORE ME,** the undersigned authority and Notary Public in and for said County and State at large, personally appeared David Stover, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is David Stover.  I am over the age of nineteen and competent to make this affidavit.

2.    I am a Lieutenant for the Coosa County Sheriff's Office.  I have served in that position for over six months.

3.    I am familiar with James Earl Crenshaw because he has been incarcerated in the Coosa County Jail since I started in March of 2007.

4.    I have read Mr. Crenshaw's Complaint and have personal knowledge of the facts underlying the Plaintiff's allegations.

5.    I am aware that Mr. Crenshaw alleges in his Complaint that Sheriff Wilson accused him of breaking the law, and that he alleges in his Complaint that I opened his legal mail outside of his presence.

1

6.    Mr. Crenshaw has not been prosecuted for any conduct or actions he has taken as a detainee in the Coosa County Jail since he was first incarcerated on June 22, 2006.

7.    It is the policy of the Coosa County Jail that all that incoming inmate mail, with the exception of legal mail, be screened for contraband. The purpose of this policy is to ensure the safety and security of the jail, the jail staff, and the inmates.

8.    It is the policy of the Coosa County Jail that all legal mail, including any correspondence from an inmate's attorney, the courts, or any public official, will be opened and inspected for contraband in the presence of the inmate.

9.    Jail Administrator Mike Mull handed me a letter addressed to Mr. Crenshaw that appeared to be a court document.

10.   The envelope had been sealed with a piece of tape on the envelope flap. It did not appear to have been opened.

11.   I was instructed to deliver the envelope to Mr. Crenshaw, and I took it directly to him. He did not complain to me that it had been opened.

12.   I did not open, or otherwise tamper with, Mr. Crenshaw's legal mail, nor am I aware of any tampering with Mr. Crenshaw's legal mail.

13.   To my knowledge, Mr. Crenshaw never filed a grievance concerning his allegations that I opened his legal mail.

14.   I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Executed on this the 9 day of October, 2007.


DAVID STOVER

2

**SWORN TO** and **SUBSCRIBED** before me this 9th day of October, 2007.

_Lena Johnston_
NOTARY PUBLIC

My Commission Expires: __3 - 7 - 11__

3